50 N.J. Super. 377 (1958)
142 A.2d 614
JACK TRUGMAN, PLAINTIFF-APPELLANT,
v.
HARRY REICHENSTEIN, CITY CLERK OF THE CITY OF NEWARK, A MUNICIPAL CORPORATION, MICHAEL A. BONTEMPO, JOHN A. BRADY, JAMES T. CALLAGHAN, RAYMOND V. SANTORO, AND ESSEX COUNTY BOARD OF CANVASSERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1958.
Decided May 27, 1958.
Opinion filed June 2, 1958.
*379 Before Judges STANTON, HALL and GAULKIN.
Mr. Samuel H. Nelson argued the cause for the appellant.
Mr. Joseph A. Ward argued the cause for the defendants-respondents (Mr. J. Ward, attorney for defendants-respondents Harry Reichenstein, City Clerk, Essex County Board of Canvassers, Michael A. Bontempo, and James T. Callaghan; Mr. Morris Barr, attorney for defendant-respondent John A. Brady; Mr. David J. Breitkopf, attorney for defendant-respondent Raymond V. Santoro).
The opinion of the court was delivered by STANTON, S.J.A.D.
The plaintiff was a candidate for the office of councilman at large at a regular municipal election held in the city of Newark on May 13, 1958. Four councilmen at large as well as a mayor and a ward councilman in each of the five wards were to be elected under Plan C of the Faulkner Act, N.J.S.A. 40:69A-55 to 40:69A-60.
N.J.S.A. 40:69A-160 provides in part as follows:
"At the regular municipal election * * * the candidates receiving the greatest number and a majority of votes cast shall be elected to the respective offices; provided, however, that if: * * * *380 (b) four councilmen at large are to be elected and 2 or more candidates for said office receive a majority of the votes cast in the election, the 4 candidates receiving the greatest number of votes shall be elected; * * *."
The defendant city clerk who supervised the election tabulated the votes received by the ten candidates for councilman at large; the names of the five candidates receiving the greatest number of votes are as follows:

 Michael A. Bontempo .............. 51,633
 John A. Brady .................... 50,670
 James T. Callaghan ............... 39,067
 Raymond V. Santoro ............... 36,703
 Jack Trugman ..................... 30,137

The total number of voters participating in the election was 106,125. No candidate for councilman at large received a majority vote of the electors participating in the election, namely 53,063. The city clerk was of the opinion that the required majority was 37,572; this figure was obtained by adding the votes received by all ten candidates (300,572), dividing that sum by the number of offices to be filled and the resulting quotient by two. The defendants Bontempo, Brady and Callaghan each received votes in excess of this; the defendant Santoro less than it. The city clerk determined that those three candidates having received a majority, they and the defendant Santoro, the four candidates receiving the greatest number of votes were duly elected. A similar determination was made by the Board of Canvassers of Essex County.
The plaintiff brought this action in lieu of prerogative writ challenging the determination of the city clerk and the board of canvassers declaring the above named defendants elected and demanding a judgment, inter alia, requiring the city clerk to call a run-off election for the election of four councilmen at large. Judgment was entered in the Law Division declaring that the formula followed by the city clerk and the board of canvassers was proper within the meaning of N.J.S.A. 40:69A-160 and approving the finding, *381 determination and certification of the election of the defendant candidates. The plaintiff has appealed therefrom.
N.J.S.A. 40:69A-161 provides in part as follows:
"In any regular municipal election referred to in section 17-11, if a sufficient number of candidates do not receive a majority of the votes cast to elect the required number of councilmen at large, or no candidate for mayor or no candidate for ward councilman receives a majority of the votes cast for his respective office, a run-off election in the municipality or ward, as the case may be, shall be held on the fifth Tuesday next following such municipal election."
The only issue is what number of votes constitutes a majority under the statutory provisions set forth above. The plaintiff contends that it is 53,063 based on the total number of electors participating in the election, namely 106,125. The defendants insist that it is 37,572, a figure arrived at under the formula conceived by the city clerk and which was approved by the Superior Court, Law Division, in a judgment entered May 20, 1954, in the unreported case of Brady v. Reichenstein. That case was cited by the court below in its conclusions. The only other possible figure that could be used in determining what constituted a majority would be 300,572, the total vote recorded for all ten candidates. This would fix the majority at 150,287. The mere statement of this demonstrates its absurdity.
Brady v. Reichenstein arose out of the previous regular municipal election in Newark in which no candidate for councilman at large received a majority, based either on the total number of voters participating in the election or on the formula. Brady claimed that he was elected on a theory which we need not go into here. It is sufficient to state that the judgment was against him as to that and that the approval which the court gave to the formula was not essential to the determination of the issue presented in that case.
The city clerk evidently assumed that if a voter recorded a choice in the contest for councilman at large he exercised his full right and voted for four candidates. On this premise he arrived at his conclusion as to what constituted a majority. *382 If we go further with this arbitrary assumption, we would have to conclude that if all the voters participating in the election voted for councilman at large, the total votes cast for them would be 424,500. Actually the total number of votes recorded was only 70.8% of this figure. If we assume that all the voters who participated in the election recorded votes for councilman at large, then the average number voted for by each elector was 2.83, not four. These figures are set forth merely to demonstrate that the formula is entirely artificial, and has no support whatever in fact. And it should be added that nowhere in the statute is there anything which would warrant the creation and use of such a formula.
There is no reported case dealing with the provisions of the Faulkner Act with which we are here concerned. It is argued that the formula used by the City Clerk is supported by the decision in Anthony v. Rea, 22 N.J. Super. 452 (App. Div. 1952). The question there was the number of signatures required on a petition for a referendum under the Alcoholic Beverage Law. N.J.S.A. 33:1-47. The statute fixed the number at not less than 15% of the qualified electors of the municipality as evidenced by the total number of votes cast at the next preceding election for members of the General Assembly in such municipality. It appeared that the municipality was situated in a county which had three members of the General Assembly; that 4,288 persons voted in the election and that a total vote of 12,061 was cast for all seven Assembly candidates. One contention was that 1,809 signatures were required, namely, 15% of 12,061 votes. The other contention was that the above total figure of 12,061 should be divided by three, the number of members of the General Assembly from the county; that the required number of signatures was 15% of this quotient, or 603. The court adopted this latter view. It pointed out also that if it adopted the other method of computation, it could lead to an absurdity if applied to a municipality in a county that had 12 assemblymen. In a hypothetical case set forth by the court, such interpretation would require 180% of all the *383 registered voters in such municipality. The only thing in that decision that gives it relevance here is that it dealt with the vote for candidates seeking election to one of multiple offices. It merely put a practical but artificial construction on the provision in the Alcoholic Beverage Law. There was no other possible method to be found in the statute. In Schwartz v. Wachlin, 89 N.J.L. 39 (Sup. Ct. 1916), we find this interesting language in a case dealing with the question of the number of signatures required for a referendum under the Walsh Act, N.J.S.A. 40:72-1 et seq.:
"The most significant change made by the Legislature in 1915 was to require 30 per cent. of the total number of legal ballots cast. This is very different from 30 per cent. of the votes cast for members of the General Assembly as required by the act of 1911. Perhaps the change was due to the greater ease and certainty in ascertaining the number of legal ballots cast than was possible with reference to the number of votes cast for members in counties where more than one member could be voted for by each elector. The addition of the word `total' emphasizes this requirement."
We are of the opinion that the meaning of the Legislature can be ascertained from the study of the pertinent provisions of the statute before us. Where there is any ambiguity the court has the duty to choose the construction which will carry out the legislative intent of the statute as a whole and give effect to all pertinent language therein. Horwitz v. Reichenstein, 15 N.J. 6 (1954). N.J.S.A. 40:69A-160 relates to the regular municipal election at which the mayor, ward councilman and councilmen at large are elected. The initial sentence contains this language: "* * * the candidates receiving the greatest number and a majority of votes cast shall be elected to the respective offices; * * *" Up to that point the test appears to be the same for all candidates. Then follow four provisos, all of which relate solely to the election of councilmen at large, and among themselves these provisos vary only as regards the number of councilmen being voted upon at a particular election. We are concerned with proviso (b), which is as follows: "provided, however, that if: * * * (b) four *384 councilmen at large are to be elected and 2 or more candidates for said office receive a majority of the votes cast in the election, the 4 candidates receiving the greatest number of votes shall be elected; * * *" The emphasized portions of the above quotations should be noted.
N.J.S.A. 40:69A-161 is the section of the statute dealing with a run-off election. In this a distinction is made between the candidates for mayor and ward councilman on the one hand and councilmen at large on the other. A run-off is required for mayor or ward councilman if no candidate for either of such offices "receives a majority of the votes cast for his respective office." On the other hand, a run-off is required in the case of councilmen at large "if a sufficient number of candidates do not receive a majority of the votes cast to elect the required number of councilmen at large." It will be noted in this latter case the words "votes cast" are followed by no limitation. If the limitation contended for by the respondents had been intended by the Legislature it would have been easy to say "if a sufficient number of candidates do not receive a majority of the votes cast for councilman at large." This fact, and the use of the phrase "votes cast in the election" in proviso (b), are of paramount significance.
From the reading of the entire Faulkner Act it is apparent that one of the ends the Legislature had in mind was to eliminate as far as possible the rule of municipalities by officials elected by a minority vote. In a regular election a candidate to be successful must obtain a majority, except where some, but not all offices of councilman at large, may be filled by minority candidates. N.J.S.A. 40:69A-160. The clear and definite aim of the statute is to obtain in so far as is possible the election of candidates by majority vote.
In the present situation we are able to ascertain the intention of the Legislature from the language of the entire act, and there is no need to resort to an artificial interpretation.
It is entirely logical to infer that in dealing with the office of councilman at large, where more than one candidate *385 could be voted for by an elector, the Legislature had in mind that the only certain and sure standard for determining whether any candidate received a majority was on the basis of the total number of votes cast in the entire election. This is particularly true where voting machines are used and there is no way to determine how many voters cast a vote for any one or more of the candidates for councilman at large.
We believe that this interpretation of the statute gives effect to all the language of it and effectuates the apparent intention of it.
It is our conclusion that no candidate for councilman at large received a majority of the votes cast. The judgment below is reversed. By reason of the necessities of time, judgment is directed to be entered immediately in this court for the inclusion in the run-off election, presently scheduled for June 17, 1958, the offices of four councilmen at large to be elected from the eight candidates who received the greatest number of votes in the regular election. The board of canvassers is directed to correct its finding, determination and certification in conformity with the conclusions expressed herein; and it is restrained from issuing any certificate of election for the office of councilman at large by reason of said election. No costs.